**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONNIE KUHN, Individually and as Administrator of the Estate of Larry Kuhn, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BROOKDALE PLACE OF WOOSTER, LLC d/b/a BROOKDALE WOOSTER, *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 5:26-cv-1832<br><br>CHIEF JUDGE SARA LIOI<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is the motion of defendant Brookdale Place of Wooster LLC d/b/a Brookdale Wooster ("Brookdale") to compel arbitration. (Doc. No. 5 (Motion); *see* Doc. No. 5-1 (Memorandum in Support).) Plaintiff Connie Kuhn ("Kuhn") did not file a response to the motion.

## I. BACKGROUND

At all times relevant to the complaint, Kuhn was the wife of Larry Kuhn ("decedent"), and she is the duly appointed administrator of his estate. (Doc. No. 1-1 (Complaint) ¶ 1.) Brookdale is an Ohio corporation that operates a long-term nursing home facility in Wooster, Ohio (*id.* ¶¶ 2, 4), and the variously identified John and Jane Doe defendants are unknown "employees, staff, [and] agents of Brookdale." (*Id.* ¶¶ 3, 5.)

Prior to his death, the decedent was a resident at Brookdale's Wooster, Ohio nursing home facility from April 2025 to July 2025. (*Id.* ¶ 4.) On July 6, 2025, Brookdale employees served the decedent a meal "containing large pieces of meat [which the decedent] was cognitively unable to

chew" because he suffered from Alzheimer's disease and Lewy Body Dementia. (*Id.*¶¶ 5–7.) The large pieces of food caused "him to choke, which resulted in extreme pain, suffering and thereafter, ultimately, death." (*Id.* ¶ 6.) The decedent died from his injuries on July 15, 2025. (*Id.* ¶ 17.)

On July 13, 2026, Kuhn filed a lawsuit in state court, on behalf of herself and the estate of the decedent, against Brookdale and its John and Jane Doe employees, raising claims of medical negligence, loss of consortium, and wrongful death. (*See* Doc. No. 1 (Notice of Removal) ¶ 1; *see generally* Doc. No. 1-1.) On August 4, 2026, Brookdale removed the action to federal court on the basis of diversity jurisdiction. (Doc. No. 1 ¶ 22.)

The present motion to compel arbitration followed on August 11, 2026. (*See* Doc. No. 5.) In its motion, Brookdale maintains that "this matter must be stayed, and [Kuhn's] claims should be transferred to binding arbitration pursuant to the terms of a duly executed agreement to arbitrate, which unequivocally encompasses those causes of action." (*Id.* at 1.[1]) Appended to the motion is the Residency Agreement signed by Brookdale and Kuhn, as the legal representative of the decedent, which contained the aforementioned agreement to arbitrate. (Doc. No. 5-2 (Residency Agreement, V. **AGREEMENT TO ARBITRATE** (emphasis in original)).) Also appended to the motion is the State of Ohio Health Care Power of Attorney and Living Will Declaration signed by the decedent and extending power of attorney to Kuhn. (Doc. No. 5-3 (Power of Attorney).)

The agreement to arbitrate contained in the Residency Agreement is broad and provides, in relevant part:

> Any and all claims or controversies arising out of, or in **any** way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding

[1] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

> interpretation, scope enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of local, state, or federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**

(Doc. No. 5-2, at 10 (V. A. **<u>ARBITRATION PROCEEDINGS</u>** § 1) (emphasis in original).)

The 30-day window for Kuhn to respond to the motion expired by rule on September 10, 2026, without Kuhn filing an opposition brief or requesting additional time to respond. *See* L.R. 7.1(d) (providing for 30 days in which to respond to a dispositive motion). Under the Court's local rules, after the time for responding to a motion has expired with no response, the Court may treat the motion as "unopposed" and rule on the motion without a hearing. L.R. 7.1(g); *see, e.g.*, *Carr v. CMH Transport, Inc.*, No. 3:20-cv-506, 2021 WL 5868956, at *2 (E.D. Tenn. Dec. 10, 2021) ("Notably, plaintiff has filed no response to defendant's motion to compel arbitration . . . [and] [t]he Court interprets such lack of response as waiver of any opposition to the motion to compel arbitration." (applying similar Tennessee local rule)); *Rees v. Corr. Corp. of Am.*, No. 4:15-cv-2050, 2015 WL 7568659, at *2 (N.D. Ohio Nov. 24, 2015) (because the plaintiff failed to respond to the motion to compel arbitration, the motion was "unopposed and the Court may deem the plaintiff to have waived opposition to the motion" (quotation marks and citation omitted)). Accordingly, the Court treats the motion as unopposed.

## II. LAW AND DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (recognizing that § 2 of the FAA "'embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006))). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration[.]" *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3-4). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citation omitted). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478, 144 S. Ct. 1173, 218 L. Ed. 2d 494 (2024). Unless there is a separate reason for dismissal (*e.g.*, lack of jurisdiction), courts do not have discretion to dismiss suits on the "basis that all the claims are subject to arbitration." *Id.* at 475–76, 476 n.2.

The Sixth Circuit applies a four-pronged test to determine whether an unwilling party[2] can

[2] Because Kuhn did not oppose the motion, there are grounds to find that Kuhn has consented to arbitration and the modified analysis—limited to ensuring the existence of a valid agreement and that the dispute falls within it—would be appropriate. *See Schotter v. Thomas Thor LLC, Inc.*, No. 5:23-cv-1909, 2023 WL 8781381, at *2 (N.D. Ohio Dec. 19, 2023) ("When the nonmoving party does not object to a motion to compel, district courts do not need to conduct the familiar four prong test for compelling an *unwilling* party into arbitration." (emphasis in original) (citing *Zube v. Ecolab, Inc.*, No. 22-cv-13111, 2023 WL 2652781, at *1 (E.D. Mich. Mar. 27, 2023))). The filing of a complaint, however, "suggests that she opposes arbitration." *Covington v. Kanan Enters., Inc.*, No. 1:18-cv-1453, 2018 WL 4411652, at *2 (N.D. Ohio Sept. 17, 2018) (drawing similar conclusion from initiation of lawsuit). Given this uncertainty, in an abundance of caution, the Court will conduct the Sixth Circuit's full four-prong test. *See, e.g.*, *id.*

be compelled to arbitrate: (1) the court "must determine whether the parties agreed to arbitrate;" (2) the court "must determine the scope of that agreement;" (3) "if federal statutory claims are asserted," the court must consider whether Congress intended those claims to be non-arbitrable;" and (4) "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted); *see Javitch*, 315 F.3d at 624 (court must engage in a "limited review" to determine whether the dispute is arbitrable (citation omitted)).

**A. Agreement to Arbitrate**

The Court finds that application of the Sixth Circuit's test clearly favors arbitration. The first of the *Stout* prongs directs this Court to determine whether "a valid agreement to arbitrate exists between the parties[.]" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415 (6th Cir. 2011) (quoting *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009)). "A written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting *Javitch*, 315 F.3d at 624) (further citations omitted).

Here, there is no doubt the parties agreed to arbitrate, as the arbitration agreement provides that "all claims or controversies arising out of, or **any** way relating to, this Agreement . . . shall be submitted to binding individual arbitration . . . and shall not be filed in a court of law." (Doc. No. 5-2, at 10 (V. A. § 1) (emphasis in original).) The Residency Agreement further provides, in two different places, that "**The parties to this Agreement further understand that a judge and/or**

**jury will not decide their case.**" (*Id.*; *see id.* at 13 (V. B. **BENEFITS OF ARBITRATION** (emphasis in original)).) Moreover, by failing to object to the motion to compel, Kuhn has waived any challenge to the agreement's validity, and the Court's review of the agreement reveals no basis on the face of the agreement to conclude that it is unenforceable. *See, e.g.*, *Colon Rosado v. Dillard Texas, LLC*, No. 1:25-cv-2721, 2026 WL 2198350, at *1 (N.D. Ohio July 30, 2026) (plaintiff waived any challenge to the validity of the agreement, or her assent to be bound by it, by failing to respond to the motion to compel arbitration); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (recognizing a presumption in favor of arbitrability (citations omitted)). Accordingly, the Court finds that the parties agreed to arbitrate.

**B. Scope of the Agreement**

The second prong—addressing the scope of the agreement—asks whether the parties agreed to arbitrate the particular claims raised in the plaintiff's complaint. "'[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement.'" *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 505 (6th Cir. 2007) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003)).

The Residency Agreement addressed the decedent's stay at Brookdale's Wooster, Ohio facility, and set forth all of the services Brookdale was to provide the decedent during his stay, including "assistance with activities of daily living, health staff monitoring, personal care and nursing services, medication administration, [and] supervision of special diets[.]" (Doc. No. 5-2, at 1, 3 (I. **SERVICES AND ACCOMMODATIONS**, C. **EXPLANATION OF SERVICES OFFERED** § 2. **Services Provided by [Brookdale]** (emphasis in original)).) It, therefore,

governed the parties' relationship as provider and resident.

Kuhn's state law claims all arise out of the decedent's residency at Brookdale, and, in particular, the events occurring on July 6, 2025, through the decedent's death, and involving Brookdale's administration of its services to the decedent during that time period. It would not be possible to maintain these claims without reference to the parties' relationship as provider and resident. The Court finds, therefore, that Kuhn's claims all address the "relationship at issue" in the Residency Agreement. *See Seguin v. Royal Highness, LLC*, No. 24-cv-126491, 2025 WL 2797277, at *5 (E.D. Mich. Sept. 30, 2025) (noting that plaintiff's FLSA claims could not be maintained without reference to the parties' relationship as employer and employee, as governed by the parties' employment agreements). Additionally, as previously noted, the arbitration provisions contained in the Residency Agreement covered "[a]ny and all claims or controversies arising out of, or in **any** way relating to, [the Residency Agreement] or any of [the decedent's] stays at" Brookdale. (*Id.* V. A. § 1 (emphasis in original).) The Court concludes that it was the intent of the parties for such claims to be included within the scope of the arbitration provisions of the Residency Agreement.

**C. Congressional Intent**

Under the third prong, this Court must consider whether Congress intended those claims to be non-arbitrable. *Stout*, 228 F.3d at 714 (citation omitted). The Court is unaware of any federal statutes prohibiting the arbitration of claims arising out of stays in nursing homes, and the Sixth Circuit has recognized that the "use of arbitration agreements in nursing homes is widespread." *GGNSC Louisville Hillcreek, LLC v. Estate of Bramer by and through Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) (citation omitted). Indeed, "[m]any cases have found that the FAA applies to

arbitration agreements involving nursing home residents." *Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 514 (W.D. Ky. 2016) (citation omitted). Because it finds no congressional intent that claims such as Kuhn's are non-arbitrable, the Court concludes that the first three prongs of the test strongly favor compelling this matter to arbitration.

**D. Whether to Stay or Dismiss**

This leaves the final prong, which tasks this Court with determining whether the action should be stayed or dismissed pending arbitration. *See McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout*, 228 F.3d at 714) (quotation omitted). As noted, § 3 of the FAA provides that upon a court's determination that a dispute is covered by the parties' arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Brookdale's motion specifically provides that "this matter must be stayed" pending arbitration. (Doc. No. 5, at 1.) Additionally, the proposed order appended to the motion provides "that this matter **SHALL BE STAYED** pending resolution of the arbitration." (Doc. No. 5-4 (Proposed Order), at 1 (emphasis in original).) While Brookdale's motion also seeks "any such further relief as is deemed just and proper[,]" neither the motion nor the supporting documentation seeks dismissal. Accordingly, the Court finds that, under 29 U.S.C. § 3, it is required to stay this action pending arbitration.

## III. CONCLUSION

For the reasons discussed herein, Brookdale's motion to compel arbitration (Doc. No. 5) is granted, and Kuhn is compelled to arbitrate the claims in her complaint. The Court hereby stays and administratively closes this case pending the conclusion of arbitration. The parties are further

ordered to notify the Court of the outcome of the arbitration proceedings within 14 days of their conclusion and whether any further proceedings are necessary in this case.

**IT IS SO ORDERED**.

Dated: October 19, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**